UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID MAIRENA BLANDON,

          Petitioner,

v.

MONTY WILKINSON, Acting Attorney General[1], *et al*.,

          Respondents.

**DECISION AND ORDER**

6:18-CV-06941 EAW

# BACKGROUND

Petitioner David Mairena Blandon ("Petitioner"), formerly a civil immigration detainee at the Buffalo Federal Detention Facility in Batavia, New York, filed a petition for a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241, seeking release or, in the alternative, a bond hearing, on the basis that his detention violated his constitutional right to due process. (Dkt. 1). The Court issued a Decision and Order on October 28, 2019 (the "October 28th D&O"), finding that Petitioner was entitled to an individualized bond hearing at which the government bore the burden of proving by clear and convincing evidence that Petitioner posed either a risk of flight or a danger to the community. (Dkt. 7). Judgment was entered on October 30, 2019. (Dkt. 8).

---

[1] Monty Wilkinson became Acting Attorney General of the United States on January 20, 2021, and has been automatically substituted as a respondent pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is instructed to modify the caption accordingly.

Petitioner's Court-ordered bond hearing was held on November 1, 2019. (Dkt. 13-3). On November 5, 2019, the immigration judge ("IJ") issued a written decision denying Petitioner's release on bond. (Dkt. 13-4).

Petitioner filed a motion to enforce the Court's Judgment on November 25, 2019, which Respondents opposed. (Dkt. 10; Dkt. 15). Respondents filed a notice of appeal in the instant action on December 26, 2019. (Dkt. 19). On January 22, 2020, the Court entered a Decision and Order granting Petitioner's motion to enforce to the extent that the Court ordered Respondents to provide Petitioner with a new bond hearing consistent with the procedures set forth by the Court. (Dkt. 23). The Court did not grant Petitioner's request for release. (*Id.* at 18-19). A second bond hearing was held on January 27, 2020, and the IJ issued a written order on February 6, 2020, again denying Petitioner's request for bond. (Dkt. 24).

Petitioner was removed from the United States on March 18, 2020. (Dkt. 30 at 4). On April 6, 2020, the Second Circuit issued an Order and Mandate granting Respondents' request to voluntarily dismiss their appeal. (Dkt. 25).

On May 5, 2020, Petitioner filed an application pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), seeking an award of attorney's fees. (Dkt. 26). Respondents filed opposition papers on May 26, 2020. (Dkt. 28). Petitioner filed a letter reply on May 26, 2020. (Dkt. 31).[2]

---

[2] Local Rule of Civil Procedure 7(a)(1) provides that "[a] moving party who intends to file and serve reply papers must so state in the notice of motion." Petitioner's notice of motion (Dkt. 26) contained no such statement, and so Petitioner was not entitled to file a

For the reasons set forth below, the Court denies Petitioner's motion for fees under the EAJA.

## DISCUSSION

### I. Legal Standard

As the Second Circuit has explained:

> The [EAJA] provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

*Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 302-03 (2d Cir. 2011) (quoting 28 U.S.C. § 2412(d)(1)(A)). "Thus, under the EAJA, eligibility for a fee award in any civil action requires: (1) that the claimant be a prevailing party; (2) that the Government's position was not substantially justified; [and] (3) that no special circumstances make an award unjust." *Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2d Cir. 2011) (quotations omitted).

### II. Petitioner is Not Entitled to a Fee Award

Respondents oppose Petitioner's fee application on several grounds. As a threshold matter, Respondents assert that the application is untimely. Respondents further argue that Petitioner is not a prevailing party and that the government's position was substantially justified. Finally, Respondents argue that in the event the Court determines that a fee award is warranted, it should not grant the amount requested by Petitioner. For the reasons

---

reply. Nonetheless, the Court has exercised its discretion to excuse compliance with the Local Rules and considered Petitioner's reply in deciding the motion for fees.

discussed below, the Court rejects Respondents' threshold contention that the application is untimely. However, the Court agrees with Respondents that the government's position was substantially justified and that the requirements for an award of fees under the EAJA are accordingly not met. The Court therefore need not and does not reach Respondents' remaining arguments.

### A. <u>Timeliness</u>

The EAJA requires that fee applications be made "within thirty days of final judgment in the action[.]" 28 U.S.C. § 2412(d)(1)(B). The statute further provides that "'final judgment' means a judgment that is final and not appealable, and includes an order of settlement." *Id.* § 2412(d)(2)(G).

The timeliness dispute in this case arises from the fact that Petitioner is not seeking any fees related to the filing and determination of his original petition. (*See* Dkt. 27 at 6 (explaining that Petitioner "represented himself *pro se* during the merits phase of the litigation, so he does not seek fees associated with that period of time.")). Instead, Petitioner's fee application relates to the litigation of his motion to enforce. Respondents take the position that the "judgment" at issue is therefore the January 22nd D&O, wherein the Court granted in part the motion to enforce, and that it became "final" on March 23, 2020, when it could no longer be appealed. (*See* Dkt. 30 at 5). However, Petitioner argues that the relevant "judgment" is the Judgment entered on October 30, 2019, which did not become "final" until April 6, 2020, when the Second Circuit issued its Order and Mandate disposing of Respondents' appeal. (Dkt. 31 at 2).

The parties have not cited any case law dealing with a factual scenario similar to the one present in this case. However, in its own research, the Court reviewed the Eleventh Circuit case of *Singleton v. Apfel*, 231 F.3d 853 (11th Cir. 2000), which it finds instructive. In *Singleton*, three plaintiffs had filed a putative class action suit challenging a policy of the Commissioner of Social Security. *Id*. at 854. The Commissioner moved to dismiss the claims of the named plaintiffs for lack of jurisdiction. *Id*. The district court granted the motion as to the two other plaintiffs but denied it as to the appealing plaintiff. *Id*. The Commissioner then filed an answer in which he informed the district court that the policy at issue had been reversed and that the change was retroactive and would accordingly apply to the appealing plaintiff. *Id*. at 854-55. In October 1996, the district court remanded the appealing plaintiff's individual claim to the agency and found that the putative class action was moot. *Id*. at 855.

The appealing plaintiff then filed an appeal, but she "did not contest the remand of her individual claim." *Id*. The Eleventh Circuit affirmed the district court's judgment on January 6, 1998. *Id*. On May 6, 1998, the appealing plaintiff filed a motion for attorney's fees pursuant to the EAJA. *Id*. The district court found that the motion was untimely, because the order remanding the appealing plaintiff's claim had not been challenged on appeal and had thus become final 90 days after entry. *Id*. The district court relied on the "collateral order doctrine," which recognizes that there are "a small class of judicial decisions which could be classified as 'collateral orders' because they 'finally determine claims of right separable from, and collateral to, rights asserted in the action.'" *Id*. at 856 (quoting *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 546 (1949)).

On appeal, the Eleventh Circuit considered as a matter of first impression "whether the collateral order doctrine may be applied to require an interlocutory EAJA fee application" and concluded that it could not. *Id.* The *Singleton* court explained that "the collateral order doctrine is permissive, not mandatory," and that just because the appealing plaintiff "could have filed her EAJA claim at the time the district court ordered the remand of her personal claim," she was not required to do so, because "final judgment" was not rendered until her appeal was concluded. *Id.* at 856-57.

The Court agrees with the reasoning in *Singleton* and applies it here. While Petitioner arguably could have sought EAJA fees related to the granting of his motion to enforce after the time to appeal the January 22nd D&O expired, he was not required to do so, because Respondents' appeal of the Judgment was still pending. The time for filing an EAJA application runs from "final judgment," and the Supreme Court has held that "final judgment" means "a judgment rendered by a court that terminates the civil action for which EAJA fees may be received." *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991); *see also Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1084 (9th Cir. 2002) (holding that "final judgment" as defined in the EAJA "designat[es] the date on which a party's case has met its final demise, such that there is no longer any possibility that the district court's judgment is open to attack"). The Judgment in this case did not become final until after Respondents' appeal was resolved, and so Petitioner's fee application is timely.

### B. The Government's Position was Substantially Justified

The Court can award attorney's fees under the EAJA only if the government's position was not substantially justified. The government "bears the burden of showing that

[its] position was 'substantially justified,' which the Supreme Court has construed to mean 'justified to a degree that could satisfy a reasonable person.'" *Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 81 (2d Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  In other words, a position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 565 n.2.  "When assessing the 'position of the United States,' [the Court] reviews both 'the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based.'" *Ericksson*, 557 F.3d at 82 (quoting 28 U.S.C. § 2412(d)(2)(D)).

The Second Circuit has expressly instructed that, in assessing the reasonableness of the government's position, "a court should not perform separate evaluations of the Government's position at each stage of the proceedings." *United States v. $19,047.00 in U.S. Currency*, 95 F.3d 248, 251 (2d Cir. 1996).  Instead, "only one threshold determination for the entire civil action is to be made." *Id*. (citation omitted); *see also Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 159 (1990) ("Subsection (d)(1)(A) refers to an award of fees 'in any civil action' without any reference to separate parts of the litigation, such as discovery requests, fees, or appeals. The reference to 'the position of the United States' in the singular also suggests that the court need make only one finding about the justification of that position.").  A district court's determination of whether the government's position was substantially justified is reviewable "only for an abuse of discretion." *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999) (citation omitted).

Here, considering the matter as a whole, the Court finds that the government's position was substantially justified. As the Court explained in its October 28th D&O, Petitioner was provided with a bond hearing by DHS on May 7, 2018—however, because Petitioner's removal order had become administratively final on April 9, 2018, the IJ concluded that he lacked jurisdiction to set bond. (Dkt. 7 at 3). This position was not unreasonable; 8 U.S.C. § 1231(a) requires that an individual be detained for the 90-day period after his order of removal becomes final. Further, the position taken by the government in opposing the petition—namely, that Petitioner had failed to exhaust his administrative remedies prior to commencing this action (*see* Dkt. 7 at 8)—had a reasonable basis in fact and law. Petitioner had not requested a new bond hearing after he was granted a stay of removal by the Second Circuit (which changed the basis for his detention from § 1231(a) to 8 U.S.C. § 1226(a)), and exhaustion of administrative remedies in this context "is generally required as a prudential matter" (Dkt. 7 at 8 (citation omitted)). The fact that the Court ultimately found that an exception to this prudential requirement applied does not render the government's position unreasonable.

Turning to the motion to enforce, the Court did find that the IJ's conduct of the bond hearing failed to comport with the requirements of due process. However, the Court's determination in that regard turned on its conclusion that the evidence relied on by the IJ was insufficient to satisfy the clear and convincing evidence standard that the Court had imposed. (Dkt. 23 at 12-13). In particular, the Court determined that Petitioner's criminal convictions for manslaughter in the first degree and criminal possession of a weapon in the fourth degree, which were based on conduct from 2013, were insufficiently recent to

establish dangerousness by clear and convincing evidence, and noted that the IJ had failed to cite any evidence presented by the government in making an alternative finding as to risk of flight. (*Id.* at 13-14). The Court further noted that the IJ had not considered whether there were less restrictive alternatives to detention and criticized the IJ for declining to grant an adjournment of the bond hearing that Petitioner's counsel had requested, thereby resulting in the exclusion of evidence that Petitioner had sought to present. (*Id.* at 14-17).

Although it is a close question, the Court concludes that a reasonable person could have thought the IJ's determination comported with this Court's decision. In particular, the Court notes that while the mere fact of a criminal conviction does not satisfy the clear and convincing evidence standard, an IJ can find dangerousness based on past criminal convictions where he appropriately considers "the circumstances of Petitioner's offense." *Arana v. Barr*, No. 19-CIV-7924 PGG DCF, 2020 WL 2094098, at *9 (S.D.N.Y. May 1, 2020) (IJ permissibly found dangerousness by clear and convincing evidence based on 1996 DWI conviction and 2016 arson conviction where, with respect to the latter conviction, "Petitioner had – in an effort to kill himself – started a fire in his bedroom, and thereby placed other occupants of the residence in danger"). Here, a reasonable person could have thought as a matter of fact that the circumstances of Petitioner's criminal convictions—namely, that in 2013 he had engaged in a fight with the victim before stabbing him with a knife (*see* Dkt. 16 at 4-5)—supported a finding of dangerousness by clear and convincing evidence. Further, the IJ's decision contains some discussion of the circumstances of Petitioner's conviction, including the IJ's acknowledgement that Petitioner claimed he was acting in self-defense. (Dkt. 13-4 at 6). While the Court

ultimately concluded that the IJ's decision did not reflect adequate consideration of the circumstances of Petitioner's conviction to support a finding of dangerousness by clear and convincing evidence, a reasonable person could have thought otherwise, and thus could have thought that the IJ had satisfied the requirements set forth by this Court.  As another judge in this District has explained, the "precise requirements [to satisfy the clear and convincing standard] in a given proceeding may vary."  *Enoh v. Sessions*, No. 16-CV-85(LJV), 2017 WL 2080278, at *8 (W.D.N.Y. May 15, 2017); *cf. $19,047.00 in U.S. Currency*, 95 F.3d at 252 (finding district court appropriately found that government's position was substantially justified even after finding a Fourth Amendment violation based on lack of voluntary consent to search, because "[i]nquiries into voluntariness are by their nature fact-based, subjective, and in many cases, finely-tuned").

As to the IJ's failure to consider alternatives to detention, this Court's October 28th D&O did not contain an express instruction to do so, and the government was specifically ordered to provide a bond hearing "consistent with the procedures outlined" therein.  (Dkt. 7 at 10-11).  The IJ thus could have reasonably concluded that he was not specifically required to include such a discussion in his decision denying bond.  Moreover, while the Court criticized the IJ for having denied Petitioner's request for a continuance (and accordingly having declined to consider evidence that Petitioner had not proffered in advance of the bond hearing), the Court further noted that the IJ has "broad discretion when calendaring matters and deciding what evidence to consider."  (Dkt. 23 at 17-18).  A reasonable IJ could have thought that the decision to deny the requested continuance fell within the scope of that broad discretion.  Accordingly, while the IJ did not comply with

- 10 -

this Court's instructions, his behavior was not "sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.'" *$19,047.00 in U.S. Currency*, 95 F.3d at 252.

Finally, the Court finds that the government's positions with respect to the motion to enforce were substantially justified. The government argued in opposition to the motion to enforce that Petitioner had failed to exhaust his administrative remedies, that his arguments constituted an inappropriate direct challenge to the IJ's assessment of the evidence, that the IJ had comported with the Court's October 28th D&O, and that the Court should in any event not order immediate release but should remand the matter to the IJ. (Dkt. 15). All of these arguments were grounded in fact and law—indeed, the Court ultimately agreed with Respondents that immediate release was not the appropriate remedy.

For all these reasons, the Court finds that the government's position, when appropriately considered as a whole, was substantially justified. An award of attorney's fees under the EAJA is accordingly not permissible, and the Court need not reach the remaining arguments made by Respondents.

## **CONCLUSION**

For the foregoing reasons, Petitioner's motion for attorney's fees pursuant to the EAJA (Dkt. 26) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 26, 2021
       Rochester, New York